**WINTHROP CHEMICAL CO., Inc., v. BURTON T. BUSH, Inc., et al.**

No. 9.

District Court, D. New Jersey.

March 27, 1942.

Harry B. Rook, of Newark, N. J. (Clair W. Fairbank, of New York City, of counsel), for plaintiff.

Jeffery, Kimball & Eggleston and Oscar W. Jeffery, all of New York City (Harry G. Kimball, of New York City, of counsel), for defendants.

884

FAKE, District Judge.

This is a patent suit based on patent No. 2,029,618, issued to Heinrich Hopff on February 4, 1936, and assigned to the plaintiff herein. The complaint charges infringement, and the defendants' answer alleges invalidity.

The patent relates to the production of alcohol. Claims 10, 11 and 19 are in issue. For present purposes, claim 11 seems to furnish a fair sample of Hopff's idea. It reads as follows: "The process for the production of phenylethyl alcohol, which comprises acting with ethylene oxide in the presence of anhydrous aluminum chloride on benzene at about 5° C." The nature of the invention is illustrated in Example 1:

"500 parts of benzene are stirred with 250 parts of anhydrous aluminum chloride and ethylene oxide is then led into the mixture while cooling to about 5°. C. and stirring until there is no further absorption of ethylene oxide. The resulting brownish solution is poured on to ice and the benzene layer is separated. After distilling off unattacked benzene 85 parts of a brown oil remains behind which boils mainly between 200° and 220° C. and practically consists of pure phenyl-ethyl alcohol. The melting point of the phenyl urethane is 79° C.

"If the ethylene oxide be led in not at ordinary temperature but at from about 50° to 60° C. in addition to phenylethyl alcohol a considerable amount of dibenzyl is formed from the phenylethyl alcohol first formed by further condensation with benzene with the splitting off of water.

"Ethylene chlorhydrin may be employed instead of ethylene oxide with the same result."

In the year 1925, Schaarschmidt, Hermann and Szemzo, having experimented in Germany with "Ethylene oxide and benzene in the presence of aluminum chloride", reported as follows in "Berichte Der Deutschen Chem. Gesellschaft":

"Equivalent quantities of benzene and aluminum chloride were mixed and the double quantity ethylene oxide in form of vapor mixed with dry hydrogen chloride were introduced into the mixture while agitating. The temperature rose at first quickly to 60° C., then it was maintained at 10° C. by cooling. During the introduction some petroleum ether was added as a solvent.

"The batch was worked up as described in experiment #1, in this case however ether was used to extract the product of the reaction and the etherical solution was dried with sodium sulfate.

"In this way a yield of 1% of beta-phenyl ethyl alcohol besides 40% of dibenzyl was obtained."

From the article above quoted, it appears clearly that Schaarschmidt et als., long before the patent in suit was issued to Hopff, had discovered and worked out the basic fact that beta-phenyl ethyl alcohol could, to some extent, be obtained by the use of the three compounds mentioned in Hopff's claim 11. True, the percentage of production was small, only 1%, yet nevertheless, there it was. Of course, Schaarschmidt and his associates were looking for a larger yield, and it appears that on bringing forth this small yield, "they postponed these (their) experiments for the time being." Their teaching remained public, however, for any one who might desire to go forward with it. As to temperature they maintained it at 10° C., which temperature is stipulated as within the range of "about 5° C." as claimed by Hopff. It therefore appears that the Schaarschmidt disclosures covered, not only the production of the alcohol from the compounds dealt with, but also the range of heat within which it was produced. It remained only for a chemist skilled in the art to proceed to take the next step, which was to further reduce the temperature and thereby greatly increase the yield of phenylethyl alcohol. This is nothing more than the exercise of that degree of skill which is expected of those learned and skilled in the science of chemistry and does not amount to invention.

The patent in suit is invalid. An order to that effect may be entered.